Good morning, Your Honors. My name is Nancy Miller, and I represent Lord Soriano-Vino this morning. This is a case where the government, at various levels, attempted to redetermine and re-adjudicate an application for SOZ long after the applicant had received her green card through SOZ and attempted to, in fact, re-adjudicate by impermissibly using confidential information in violation of the confidentiality clause of 210b-6 of the Immigration Nationality Act. Ms. Soriano-Vino had received her green card in 1990. In 1992, she left the country in order to have a brief casual visit with her family in the Philippines. When she came back, she was asked two questions at primary inspection. She was asked where she worked, and she was asked who she worked for. Now, is it your contention that those two questions violated the confidentiality provisions? I don't believe that those questions taken in themselves violate. I think, however, that they were asked because they were attempting to ‑‑ there was intent at that point to violate. What in the record establishes that at that point in the interview there was intent to violate the SOZ provisions? The testimony from ‑‑ I think it was ‑‑ I think her name was Debenney, the immigration inspector who testified at the immigration court hearing, said that both she and the primary inspector had determined that they were suspicious because the green card itself was listed as having been obtained through SOZ, and that's why they decided to ask the questions where did you work and who did you work for. And once they saw that it was a SOZ application, they decided they wanted to pursue ‑‑ So is it your argument that once there is an indication that there is a SOZ connection, that all questioning must cease? All questioning regarding the SOZ application must cease. Certainly they can ask ‑‑ Well, if they saw special agricultural worker status was obtained by fraud, why would it have any virtue as to confidentiality? Because Congress intended it to. Because Congress created the ‑‑ Fraud in the inducement, doesn't that make it suspect right from day one? I don't know whether it makes it suspect, but I think that Congress has spoken very clearly about the fact that they can't go there. That ‑‑ But that's not what the Nelson and Lopez's cases say. They don't say that that was the congressional intent, was to keep it out of all judicial proceedings. Do you have any cases that support what you just said that are contrary to Nelson or Lopez? I think that the board's decision in Reynasi, Masri says that very clearly. It says quite plainly that, in fact, they say that the language is clear and unequivocal and that once the SOZ application has been adjudicated and the applicant has been granted temporary status and up until the point of getting their green card, you can determine whether or not they're eligible for SOZ. But once that period has passed, you can't go there. You can't look at information. So is it your position that if the INS obtains information from someone through questioning and that same information is contained in the SOZ file, that information must be excluded from evidence before the IJ or the BIA? Yes. Even if the government or the INS agent never had access to the SOZ file? Yes. And the record here shows that the airport security person did not have access to the SOZ file. Isn't that correct? That is correct. They said that their computer system did not have access to the A file. However, all of the information that was asked in the Q&A was relating to the SOZ file. Well, it was relating to the general history of how she got here and the circumstances of how she got here, which you would ask of anyone coming in, SOZ or not. Not necessarily, Your Honor. You could certainly ask where they were born. You could ask their birth date. How long have you been? And how long have you been working here? And who is your employer? And those questions are all appropriate. Well, are they? Why aren't they? Because if you are looking at whether or not something has, a green card has been obtained from fraud, you must be able to look at, you must be able to ask the appropriate questions. And if you are forbidding from asking those questions, then you can't say where did you work, how did you get your green card, because you can't go there. Well, someone who has a SOZ application through fraud, it's going to be hands-off. We're never going to be able to inquire into whether that application was, in fact, fraudulent or not. Well, you're not going to be able to ask that applicant. That's true. Well, who do I go to? The employers. The employers aren't at the border. No, they're not. But that's why there are other ICE officers who can, in fact, create investigations and who can conduct investigations. But what about the expressed intent of Congress regarding fraud in the application process? Are we to disregard that? I think that the intent of Congress regarding fraud, which is 212a6c, is superseded by 210b6, because that came after, and Congress, we have to assume, knew that 212a6c existed, and yet they passed a statute that said that the confidentiality provision of the amnesty application exists and that it protects the information that the applicant gave. It doesn't say that it just protects the form, that it just protects the application itself. It protects the information. But a basic tenet of statutory construction is that we construe all parts of the statute. So your argument would mean that the portion about fraud is negated, and that can't be consistent with Congress's intent, because Congress does not pass legislation or does not, by implication, repeal legislation. So how do you reconcile those two provisions? By the construction that says that we must assume when Congress passes the statute that they know what the rest of the statute contains. And so when Congress passed the SAWS legislation, when they passed 212b6, we have to assume that they knew that 212a6c existed. And intended for it to continue in effect. And intended for it to continue in effect, except with the limitation that you could not look at the information provided by the alien, by the applicant. And I think the language in the statute there is clear. But they didn't look at the information provided by the alien. Yes, they did. That's exactly the point. With all due respect, Your Honor, yes, they did. They did look at the applicant. By asking her all those questions about where she worked, what farms she had worked in, where – what she had done on the farms, who was her supervisor, who was her manager, how had she gotten paid, who had she roomed with. These are all questions regarding her SAWS application. These – They're all questions designed to find out whether there was fraud in her application process. Which they were not entitled to do. It's not what the statute says. Congress's primary intent in passing this was the unauthorized disclosure to other governmental entities. But Congress is also concerned about fraud in the application process. And if we take your reasoning to its logical conclusion, you're unable to ask any questions at the border of these applicants that might establish fraud in the application process. You're able to ask questions, but not ones that will establish fraud in the application process. And as Nasri said, that's exactly what Congress intended. It's not what Nelson and Lopez said. I think that in this instance, the Board takes precedence. I will reserve the rest of my time for rebuttal. Thank you. All right. We'll hear from the government. May it please the Court, Christina Periscindola for the Attorney General. Ms. Soriano was placed in removal proceedings because she made a material misrepresentation when she applied for admission into the United States. It's undisputed that she obtained her residency by fraud. The Special Agricultural Workers Program protects the application form itself, not the information or the facts in the form. This form asks for information such as the applicant's name, country of origin, date of birth, and so on. Clearly, we can't expect that sort of information to be held confidential. So what is confidential? The form itself is confidential, and the Board's decision in Nasri lays this out very well. In that case, the government brought rescission proceedings against an alien, and the only evidence that the government had of the alien's fraud or misrepresentation was that application form. And the Board of Immigration Appeals said that you cannot use that. So that's what's protected. Also, in Nasri, the Board recognized that if this information is available through an independent source, then it can be used. And it's very similar in criminal law and evidence. You know, certain searches and seizures are illegal, but if the information can be obtained from an independent source. Is the source of the information considered independent? Because she was the source of the information on the application, and she's also the source of the information at the border interview. So how is that independent? Oh, yes. Well, Your Honor, she was asked four years later when she was applying for admission into the United States, and, you know, basically she went through the primary inspection that everyone goes through when they arrive. And her responses to some very basic questions made the inspectors suspicious. And so she was referred to secondary inspection. How is that different? But how is that an independent source, though? Well, because they were asked by, let's see, a different individual with a different agency who had no access to Ms. Soriano's special agricultural worker application form. And it came from, the admission came from Ms. Soriano herself. Does it undercut the usefulness of the confidentiality requirement of SAW to allow the information to be obtained as it was in this case? Is that in conflict with the statute as the Petitioner suggests? Your Honor, I don't think it is, because there is also, there are provisions that make an alien inadmissible for engaging in fraud, and it would be, it would just unreasonably restrict border patrol officers and airport inspectors to not be allowed to ask very basic questions. I mean, we have a, there are two competing public policy interests here. We have to balance the interest in letting airport inspectors be able to inspect all arriving individuals, aliens and citizens, and to allow them to exercise their discretion with the confidentiality provisions here. And as, if you look in the record, as the airport inspector testified, the information in the special agricultural application is not available to these inspectors. So she had no access to it, and that's clearly consistent with the statute. And, you know, I just want to reiterate, under Ms. Soriano's reading of the statute, every single piece of information on that form would be confidential, which I don't think is what Congress intended. Also, I should add that there are very strict penalties that can be imposed on an airport inspector for disclosing this information or on anyone, and this is in 8 U.S.C. 1160b6d. If there are no further questions, respond and ask the Court to affirm the Board's decision and deny this petition for review. All right. Thank you, counsel. Rebuttal. Thank you. I don't think that there's any way that we can say that the information obtained from Ms. Soriano-Vino was independent of her application. It came directly from her. It came from questioning of her. It doesn't matter if it was a different officer. It doesn't matter if it was at a different time. It was the same source. It was from her. And as a ---- What if she volunteered it? Would that be okay? What if her ---- was it her mother or sister who was traveling with her? It was her sister. Sister. What if she volunteered it? Would that be okay, or is that still forbidden? Does that make it ---- If her sister simply said or if her sister blurted out ---- What if her sister turned on her? She got mad at her. They got in a fight on the airplane on the way in, and she decided to turn her in. Is that okay? Yes, it would be. Yes. It wouldn't be too good for the family, but it would be acceptable. Yes. Because that would be independent. But I don't think that you can say that the information coming from her directly is independent. And my time is up. Thank you, Your Honor. All right. Thank you, counsel. Thank you to both counsel. The case just argued is submitted for decision by the court. The next case on calendar for argument is Lee v. Holder.
judges: Zouhary, Goodwin, Rawlinson